# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| VALERIE WEBB, ) | |
| ) | |
| Claimant, ) | No. 13 CV 4988 |
| ) | |
| v. ) | Jeffrey T. Gilbert |
| ) | Magistrate Judge |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

Claimant Valerie Webb ("Claimant") brings this action under 42 U.S.C. § 405(g) against Respondent Carolyn W. Colvin, Acting Commissioner of Social Security ("the Commissioner"), seeking review of the Commissioner's decision to deny Claimant's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act. Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 7.]

Claimant has moved pursuant to Federal Rule of Civil Procedure 56 for summary judgment. [ECF No. 16.] The Commissioner has filed a cross-motion seeking the same relief. [ECF No. 21.] For the reasons stated below, Claimant's motion for summary judgment is granted, and the Commissioner's motion for summary judgment is denied. The matter is remanded to the Social Security Administration ("the SAA") for further proceedings consistent with the Court's Memorandum Opinion and Order.

## I. PROCEDURAL HISTORY

On April 15, 2010, Claimant filed an application for DIB, alleging a disability onset date of May 18, 2009. (R. 140-146.) On August 12, 2010, the SAA initially denied her application.

(R. 63.) Then, on December 8, 2010, the SAA denied the application on reconsideration. (R. 62.) Within about a month, Claimant filed a request for an administrative hearing. (R. 78-79.) An Administrative Law Judge ("the ALJ") held a hearing on October 19, 2011. (R. 37.) At that hearing, Claimant, who was represented by counsel, appeared and testified. (R. 37, 38-55.) Also, Jeffrey Webb, Claimant's husband, and a vocational expert ("the VE") appeared and testified. (R. 37, 55-56 (the husband's testimony), 57-61 (the VE's testimony).)

Several months after the hearing, on March 29, 2012, the ALJ issued a written decision. (R. 17-34.) In the decision, the ALJ went through the five-step sequential evaluation process and ultimately found Claimant not disabled under the Social Security Act. (R. 21.) At step one, the ALJ found that Claimant had not engaged in substantial gainful activity ("SGA") since May 18, 2009. (R. 19.) At step two, the ALJ found that Claimant had the severe impairments of status-post cerebrovascular accident with residual depression and cognitive impairment, anxiety, lumbar spine disorder, chronic obstructive pulmonary disease, right peripheral vision loss, and cardiomyopathy. (R. 19.) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1525 and 404.1526). (R. 20.)

Before step four, the ALJ found that Claimant had the residual functional capacity ("RFC") to perform sedentary work that involved only two-to-three step simple, repetitive, routine tasks. (R. 22.) The ALJ found that Claimant's RFC was further limited because she could: (1) never climb ladders, ropes, or scaffolding; (2) occasionally climb ramps/stairs; (3) occasionally balance, stoop, kneel, crouch, and crawl; and (4) never use peripheral vision in the right eye. (R. 22.) The ALJ further found that Claimant should avoid concentrated exposure to

2

(1) hazards, such as heights and dangerous moving machinery, and (2) lung irritants. (R. 22.) Finally, the ALJ limited Claimant to no contact with the general public and only occasional contact with co-workers and supervisors for work related purposes. (R. 22.) Based on this RFC, the ALJ found at step four that Claimant could not perform any past relevant work. (R. 27.)

At step five, the ALJ found that there were jobs that exist in significant numbers in the national economy which Claimant could perform. (R. 28.) Specifically, the ALJ found Claimant could work as a sorter, an inspector, and a hand packager. (R. 28.) Because of this determination, the ALJ found that Claimant was not disabled under the Social Security Act. (R. 29.)

On April 17, 2012, Claimant sought review of the ALJ's decision. (R. 13.) On May 10, 2013, the Social Security Appeals Council denied Claimant's request. (R. 1-3.) Because of that denial, the ALJ's decision became the final decision of the Commissioner. (R. 1.) *See also Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009). Claimant now seeks review in this Court pursuant to 42 U.S.C. § 405(g). *See Haynes v. Baumhart*, 416 F.3d 621, 626 (7th Cir. 2005).

## II. STANDARD OF REVIEW

In reviewing the Commissioner's decision, a court may not "displace [an] ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue,* 529 F.3d 408, 413 (7th Cir. 2008). A court "will reverse the findings of the Commissioner only if they are not supported by substantial evidence or if they are the result of an error of law." *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart,* 297 F.3d 589, 593 (7th Cir. 2002).

Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if an ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue,* 516 F.3d 539, 544 (7th Cir. 2008). While an ALJ is not required to address "every piece of evidence or testimony in the record," the analysis "must provide some glimpse into the reasoning behind [the] decision to deny benefits." *Zurawski v. Halter,* 245 F.3d 881, 889 (7th Cir. 2001). An ALJ must, at a minimum, articulate his analysis "with enough detail and clarity to permit meaningful appellate review." *Boiles v. Barnhart,* 395 F.3d 421, 425 (7th Cir. 2005). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue,* 556 F.3d 558, 562 (7th Cir. 2009).

## III. ANALYSIS

Claimant asserts that the ALJ made five errors. They are as follows: (1) the ALJ did not properly apprise the VE of Claimant's moderate limitation in concentration, persistence, or pace; (2) the ALJ did not account for this same limitation in the RFC; (3) the ALJ did not clearly identify jobs that are consistent with the RFC; (4) the ALJ erred when assessing Claimant's credibility; and (5) the ALJ improperly weighed the opinions of Dr. Ira Goodman and Dr. Darnika Graham. The Court finds, for the reasons discussed below, that the ALJ committed the first three errors, and that these errors require reversal and remand. On remand, the ALJ should revisit her credibility finding for the reasons discussed below. The Court need not address the final alleged error concerning the weighing of medical opinions.

### 1. The ALJ's Questioning of the VE Did Not Adequately Account for All of Claimant's Limitations.

In questioning a VE, an ALJ has an obligation to bring to the VE's attention all of a claimant's limitations supported by the medical record. *Varga v. Colvin,* 794 F.3d 809, 813 (7th

4

Cir. 2015). In particular, an ALJ must ensure that a VE is apprised of a claimant's deficiencies of concentration, persistence, and pace. *Jelinek v. Astrue*, 662 F.3d 805, 813 (7th Cir. 2011). This responsibility is entirely distinct from the ALJ's duty to properly account for such deficiencies when crafting her RFC. *Yurt v. Colvin*, 758 F.3d 850, 858 (7th Cir. 2014); *Bates v. Colvin*, 736 F.3d 1093, 1101 (7th Cir. 2013).

In this case, the ALJ found that Claimant had "a moderate limitation" in concentration, persistence, or pace. (R. 21.) Therefore, the VE could not evaluate fully Claimant's work prospects unless she was made aware of this limitation.

The general rule is that an ALJ must note such a limitation in her questioning. *See O'Connor-Spinner v. Astrue*, 627 F.3d 614, 619 (7th Cir. 2010) (using the phrase "general rule" and the word "exception"). In fact, in most cases, an ALJ "should refer expressly to limitations on concentration, persistence and pace . . . ." *Id.* at 620-21. If an ALJ does not directly describe the limitation in her questioning, the Court usually "will not assume that a VE is apprised" of the limitation. *Varga*, 794 F.3d at 814; *see also Yurt*, 758 F.3d at 857-58. However, there are two exceptions to this general rule. That means there are two instances where an ALJ is not required to directly notify a VE of deficiencies in concentration, persistence, or pace. The first is when her questioning renders the deficiency irrelevant. The second is when a VE is indirectly made aware of the deficiencies

Under the first exception, an ALJ need not describe such deficiencies when (1) they are triggered only in certain situations and (2) her questioning precludes jobs involving the trigger(s). *O'Connor-Spinner*, 627 F.3d at 619. When there are clearly ascertainable and avoidable triggers, the questioning need only preclude jobs involving those triggers. *See Walters v. Astrue*, 444 F. App'x 913, 918 (7th Cir. 2011). If the questioning does so, then a VE will not

5

consider jobs in which a claimant's performance would be impacted by any deficiency, thereby rendering the deficiencies themselves irrelevant. The first exception does not apply in this case because the ALJ did not find that Claimant's moderate limitation was triggered in discrete and avoidable situations.

The second exception arises when the VE learns about the limitation indirectly, that is from a source other than an ALJ's questioning. *O'Connor-Spinner*, 627 F.3d at 619. There are two other potential sources: medical records and hearing testimony. *Id.* When a VE is apprised of the limitation through one of these two sources, it usually is reasonable to presume that she considered this information in answering an ALJ's questions. Therefore, in such a situation, an ALJ need not directly inform the VE of the limitation.[1]

In this case, the VE was not adequately apprised of Claimant's limitation by an indirect source. There is no evidence in the record that the VE reviewed the medical evidence in the record. Instead, she only testified to reviewing the exhibits "regarding the claimant's work history." (R. 57.)

The VE also testified that she heard testimony "regarding the claimant's work history." (R. 57.) Even if the VE heard all of the testimony at the hearing, however, that testimony could not have adequately apprised her of Claimant's moderate limitation.

Only one witness testified about Claimant's deficiencies of concentration, persistence, and pace – Claimant herself. Much of her testimony on this issue was very general. *See, e.g.,* R. 42, 43, 51, 52, 54. For instance, she was asked, "[Do you experience] [d]ifficulty thinking, concentrating, focusing?" (R. 42.) In response, she said, "Yes." *Id.* Asked if she had "[a]ctual memory loss," Claimant again only said, "Yes." (R. 42.) When the ALJ asked Claimant if she

---

[1] This exception does not apply if an ALJ "poses a series of increasingly restrictive hypotheticals because in such cases we infer that the VE's attention is focused on the hypotheticals and not on the record." *O'Connor-Spinner*, 627 F.3d at 619.

6

read books, magazines, or newspapers, she said, "No. I can't." (R. 50.) She gave a similarly perfunctory answer when asked if she watched television. (R. 51.)

Claimant provided a few examples of her deficiencies, noting how hard it was to read books, to do crafts, to use computers, and to cook food. (R. 42, 52, 54.) But even this testimony was undeveloped. With respect to reading, Claimant described how she has "a really hard time," must "sound [the words] out," and does not "understand them at all." (R. 42.) Likewise, she explained that she did not use a computer because "I don't understand them." (R. 52.) Even on the rare occasion when Claimant provided more detail, her answers were still largely unenlightening because they were rambling. For instance, asked when she experienced confusion, Claimant answered,

> "Any situation, like in -- just want to make myself something to eat, and I'll go walk in the kitchen, and then I stand there, because I don't know where I'm supposed to -- what I'm supposed to get to put together to make the sandwich, and then I usually get frustrated and have my husband try to help do it, because I don't -- just stupid things. I mean, stupid, everyday things, I just can't even do them, because I don't understand them. It's like I look at it and it looks foreign to me." (R. 54.)

Such undetailed and jumbled testimony could not have adequately apprised the VE of Claimant's deficiencies. Indeed, in finding that Claimant had a moderate limitation, the ALJ did not focus on her testimony. (R. 21.) Instead, the ALJ discussed the extensive medical evidence in the record. (R. 21.) And no testimony brought this evidence to the VE's attention. Therefore, the record does not show that the testimony provided the VE with sufficient information to account for Claimant's moderate limitation when answering the ALJ's questions.

Because neither of the two exceptions applies, the ALJ was required to directly apprise the VE of the moderate limitation in her questions. *Varga*, 794 F.3d at 814; *see also Yurt*, 758 F.3d at 857-58.

7

Further, in crafting questions that incorporate deficiencies of concentration, persistence, or pace, an ALJ "must account for both the complexity of the tasks *and* the claimant's ability to stick with a task over a sustained period." *Warren v. Colvin*, 565 F. App'x 540, 544 (7th Cir. 2014) (emphasis added). These are "not the same . . . ." *O'Connor-Spinner*, 627 F.3d at 620. Some words or phrases may describe both complexity and stick-to-itivness. But many only relate to one. In particular, terms like "repetitive," *Warren*, 565 F. App'x at 544-45, "routine," *Varga*, 794 F.3d at 814, "unskilled," *Yurt*, 758 F.3d at 857, and "simple," *Walters*, 444 F. App'x at 918; *Jelinek*, 662 F.3d at 813-14, *only* account for complexity.

Here, the ALJ's hypotheticals limited Claimant to "two to three steps simple, repeated, routine tasks." (R. 58-59.)[2] As the above case law explains, "simple" and "routine" do not account for stick-to-itivness. "Repeated" is not different from "repetitive" in this respect. The only word or phrase used by the ALJ that is not dealt with directly in the above cases is "two to three steps." However, this phrase also is no different in this respect. A description of the number of steps involved in a task illustrates how complex that task is. It does not provide any insight in whether a person can actually concentrate on that task for the requisite time period. Therefore, none of the ALJ's questions directly apprised the VE of Claimant's moderate limitation.

Because the VE was not adequately informed about Claimant's deficiencies of concentration, persistence, or pace, she could not have considered them in answering the ALJ's questions. Therefore, the case must be remanded for further consideration in light of the deficiencies discussed above. *See Varga*, 794 F.3d at 814 (explaining that such improper questioning constitutes reversible error).

---

[2] The ALJ's RFC also restricted Claimant's contact with others. (R. 59.) It is not clear that contact with others is a trigger for her deficiencies. There is no indication that the ALJ found as much. Therefore, this restriction is not relevant to her limitation.

## 2. The RFC Did Not Adequately Account for All of Claimant's Limitations.

An RFC represents the *most* that a claimant is capable of doing despite her limitations. *Simila v. Astrue*, 573 F.3d 503, 513 (7th Cir. 2009). Therefore, an ALJ must consider all medically determinable impairments, both physical and mental, in crafting an RFC. *Craft v. Astrue*, 539 F.3d 668, 676 (7th Cir. 2008). And "[a]ny limitations found by the ALJ at step three of her analysis should be included in the RFC assessment." *Kobal v. Colvin*, 2015 WL 148579, at *2 (N.D. Ill. Jan. 9, 2015).

In this case, the ALJ found at step three that Claimant had a moderate limitation in concentration, persistence, or pace. (R. 21.) The RFC only accounted for this limitation by restricting Claimant to "performing 2-3 step simple, repetitive, routine tasks." (R. 22.) This RFC language is almost identical to the wording in the ALJ's questions for the VE. Thus, it suffers from the same defect discussed above; that is, the language does not account for a moderate limitation in concentration, persistence, or pace.

The Commissioner relies on two sources in arguing that the RFC was appropriate. First, the Commissioner cites *Johansen v, Barnhart*, 314 F.3d 283 (7th Cir. 2002). *Johansen* involved a claimant whose limitations in concertation, persistence, and pace could be entirely neutralized by a repetitive, low-stress work environment, which the RFC required. *Yurt*, 758 F.3d at 858 (describing and distinguishing *Johansen*). The instant case is different because the ALJ did not find that Claimant limitations were triggered by avoidable or controllable circumstances.

Second, the Commissioner notes that a state agency psychological consultant concluded that Claimant could perform two to three step tasks. (R. 433-434.) This does nothing to help the Commissioner's case. Indeed, this argument misses Claimant's entire point. The Seventh Circuit has explained that certain moderate limitations in concentration, persistence, or pace

9

cannot be accounted for only by step-based limitations. Claimant has that type of limitation. And a state consultant cannot overrule the Seventh Circuit.

The Commissioner has not offered any persuasive defense of the RFC. For the same reasons discussed in the previous section of this Memorandum Opinion and Order, limitations such as those in Claimant's RFC do not account for moderate limitations in concentration, persistence, or pace. *See also Christoffel v. Colvin*, 2013 WL 4788095, at *6 (N.D. Ind. Sept. 9, 2013).

### 3. The ALJ Failed to Clearly Identify Jobs That Claimant Could Perform.

The ALJ found that Claimant could work as a "sorter," an "inspector," and a "hand packager." (R. 28.) The ALJ appears to have been trying only to repeat the VE's testimony. The VE actually testified, though, that a person with Claimant's RFC could work as a "sorter," an "inspector, check weigher,"[3] and a "hand packager." (R. 59.) Neither the ALJ nor the VE provided codes from the *Dictionary of Occupational Titles* ("DOT") for these jobs. (R. 28, 59.) Both described them as involving sedentary work and having Specific Vocational Preparation ("SVP") levels of 2. (R. 28, 59.) It is impossible to tell what jobs the ALJ was referring to.

Claimant contends that "hand packager" refers to "packager, hand," which is an SVP level 2 job. DOT 920.587-018. "Packager, hand" is inconsistent with the ALJ's description of the job and the RFC because it involves medium work and requires the ability to carry out detailed instructions. *Id.* But at least "packager, hand" seems very much like "hand packager." On the other hand, there are numerous jobs that have "sorter" and "inspector" in their titles. "Sorter" could mean, again as Claimant argues, "sorter (clerical)," which is a sedentary job.

---

[3] This is a distinction with a difference because "check weigher" is the only identified job that has both the SVP level – 2 – and the strength level – sedentary – described by the ALJ and the VE. DOT 737.687-026.

10

DOT 209.687-022. But this job is inconsistent with the ALJ's description of "sorter" because it has an SVP level of 3; so maybe the ALJ was referring to a different sorter job. *Id.* Claimant asserts that the third job, "inspector" is "inspector and hand packager." DOT 559.687-074. "Inspector and hand packager" is also inconsistent with the ALJ's descriptions and the RFC because it involves light work and detailed instructions. DOT 559.687-074.

The Commissioner has not provided an alternative explanation of which jobs the ALJ was trying to identify.

Faced with such a convoluted record, the Court cannot determine what jobs the ALJ found Claimant capable of performing. That means the Court also cannot conclude whether the ALJ erred by only identifying jobs that are inconsistent with Claimant's RFC. On remand, the ALJ should more clearly identify which jobs, if any, Claimant can perform.

**4. On Remand, the ALJ Should Revisit Claimant's Credibility.**

An ALJ's credibility finding "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Brindisi ex rel. Brindisi v. Barnhart*, 315 F.3d 783, 787 (7th Cir. 2003) (quoting Social Security Ruling 96-7p). In this case, the ALJ determined that Claimant "has demonstrated credibility concerns" that "undermine the veracity" of her claims. (R. 26-27.)[4] This assertion is amorphous, and does not clearly describe the weight that the ALJ

---

[4] Earlier in the opinion, the ALJ also stated: "I find . . . the claimant's statements concerning the intensity, persistence and limiting effects of his symptoms are not credible, as her allegations are unsupported and even contradicted by the medical evidence of record, as will be discussed below." (R. 23.) This is simply boilerplate language which only addresses the credibility of a portion of Claimant's statements. Moreover, the conflict with medical evidence is not a sufficient basis to disregard Claimant's statements about her symptom's intensity, persistence, and effects. *Adaire v. Colvin*, 778 F.3d 685, 687 (7th Cir. 2015).

11

gave to Claimant's testimony. Moreover, the ALJ's five proffered reasons for concern about Claimant's credibility merit additional consideration on remand. (R. 26-27.)

Two of these reasons are, on the current record, arguably good reasons. Claimant alleged that she had problems with her hands which the ALJ concluded were contradicted by the medical evidence. (R. 26.) And Claimant stated that she suffered from cognitive deficits all the time, but, according to the ALJ, she did not seem to be confused or thinking slowly at the hearing. (R. 26.) If the ALJ's characterizations of the record are accurate – an issue which the Court is not now resolving – then these two findings may support an adverse credibility inference.

The record, however, clearly does not support one of the ALJ's reasons for concern. Specifically, the ALJ described Claimant as testifying that she could not drive a car, and that her husband got mad when she hit people with the car. (R. 27.) If Claimant had made these two statements, they would have been inconsistent. Claimant actually testified, though, that she could not drive a car, and that she hit people when she pushed a *shopping cart*. (R. 49.) *See also* ECF No. 22, at 10. Because Claimant's actual testimony was not contradictory, it cannot support the adverse credibility inference which the ALJ drew.

The last two proffered reasons require additional exploration and explanation on remand. The ALJ disbelieved Claimant's assertion that her lack of insurance was keeping her from getting the care she needed. The ALJ noted that Claimant has received some care for her back pain and that "she has not expressed a desire or need for other forms of treatment." (R. 26.) However, Claimant testified that she could not get treatment because she lacked insurance. (R. 53.) She explained that her lack of insurance kept her from getting treatment after her stroke and for her back pain. (R. 53.) The record supports her testimony at least in part because Dr. Ira Goodman explained that Claimant should have received a spinal cord stimulator, but she was

12

unable to afford one because she was on Public Aid. (R. 380.) The ALJ should explore this issue more thoroughly on remand.

The ALJ also concluded that Claimant's attendance at craft shows, eating out, and spending time with others contradicted her testimony that she suffered from anxiety and avoided people. (R. 26-27.) The ALJ cited two of Claimant's Function Reports when discussing her credibility in this regard. In the reports, Claimant described how she went to craft shows "when I can" and went out, usually to eat, with her in-laws every weekend "as long as I'm feeling ok . . . ." (R. 212, 262.) The reports do not describe any additional time that she spent with others. Then, at the hearing, Claimant reaffirmed that she ate with her in-laws every weekend (R. 50), but clarified that she only attended craft shows "[o]nce in a great while," meaning about once every "four or five months." (R. 51.) Considering these very limited social activities, the ALJ should more thoroughly consider whether they actually conflict with Claimant's testimony about her limitations so as to justify an adverse credibility inference.

## IV. CONCLUSION

For the foregoing reasons, Claimant's motion for summary judgment [ECF No. 16] is granted, and the Commissioner's motion for summary judgment is denied [ECF No. 21.]. The case is remanded to the Social Security Administration for further proceedings consistent with the Court's Memorandum Opinion and Order.

Jeffrey T. Gilbert
United States Magistrate Judge

Dated: December 28, 2015